# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FT. MYERS DIVISION

WILLIAM J. KOMER,

                Plaintiff,

-vs-                                              Case No.  2:12-cv-305-FtM-29DNF

CAROLYN W. COLVIN, Acting
Commissioner of Social Security[1],

                Defendant.

_____

# REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

       Plaintiff, William J. Komer, seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying his claim for Disability and Disability Insurance Benefits and Supplemental Security Income[2]. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions.  For the reasons set out herein, it is respectfully recommended that the decision of the Commissioner be **AFFIRMED**, pursuant to §205(g) of the Social Security Act, 42 U.S.C §405(g).

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted, therefore, for Commissioner Michael J. Astrue as the defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of section §205(g) of the Social Security Act, 42 U.S.C. §405(g).

[2] Because the disability definitions for DIB and SSI are identical, cases under one statute are persuasive as to the other.  *Patterson v. Bowen*, 799 F.2d 1455, 1456 (n.1 (11th Cir. 1986); *McCruter v. Bowen*, 791 F.2d 1544, 1545 n.2 (11TH Cir. 1986).

I.      **Social Security Act Eligibility, Procedural History, and Standard of Review**

The law defines disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § § 416(I), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making Plaintiff unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d) (2); 20 C.F.R. § § 404.1505-404.1511.

A.      **Procedural History**

On June 19, 2008, Plaintiff filed an Application for Disability and Disability Insurance Benefits, alleging a disability onset date of January 1, 2003, and filed an Application for Supplemental Security Income on June 30, 2008, also alleging January 1, 2003, as the disability onset date. (Tr. 19)  Plaintiff's last date insured was December 31, 2011. (Tr. 21). Plaintiff's request for benefits was denied on December 1, 2008, and upon reconsideration on February 10, 2009. (Tr. 19). An administrative hearing was held before Administrative Law Judge ("ALJ") Benjamin F. Parks on February 22, 2011. (Tr. 23). Plaintiff, Dr. Sergio Bello, Medical Expert and Vocational Expert ("VE") Robert Raschke testified at the hearing. (Tr. 33). On May 18, 2011, the ALJ rendered his decision, in which he determined that Plaintiff was not disabled within the meaning of the Social Security Act from January 1, 2003, through the date last insured. (Tr. 16).  Plaintiff's Request for Review was denied by the Appeals Council on March 28, 2012. (Tr. 1-3).

B.       **Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion.  Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't. of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).  The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C.A. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920.  In step one, the claimant must prove that he is not undertaking substantial gainful empoyment. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. § 404.1520(a)(4)(i).  If a claimant is engaging in any substantial gainful activity, he will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(I).

In Step Two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii). If the claimant's impairment or combination of impairments does not significantly limit his physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled. 20 C.F.R. § 1520(c).

In Step Three, the claimant must prove that his impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Sbpt. P. App. 1. *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(iii). If he meets this burden, he will be considered disabled without consideration of age, education and work experience. *Doughty*, 245 F.3d at 1278.

In Step Four, if the claimant cannot prove that his impairment meets or equals one of the impairments listed in Appendix 1, he must prove that his impairment prevents him from performing his past relevant work. *Id.* At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of his past relevant work. 20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f) . If the claimant can still perform his past relevant work, then he will not be found disabled. *Id.*

In the Step Five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience. *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, he will be found not disabled. *Id.* In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("grids"), and the

second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004).  Only after the Commissioner meets this burden does the burden shift back to Claimant to show that he is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

## II.    Review of Facts

### A.  Background Facts

Plaintiff was born on June 1, 1961, and was 49 years of age at the time of his hearing. (Tr. 35).  Plaintiff  has a twelfth grade education. (Tr. 35). He has past relevant work experience as a truck driver (i.e., delivery, tow truck, repossessions, local deliveries, no long distance driving). (Tr. 47).  Plaintiff testified that he stopped working in 2003 due to a heart attack and back and arthritis problems. (Tr. 36). Plaintiff suffers from status post left nephrectomy secondary to renal calculus obstruction, status post pancreatitis, coronary artery disease (with normal left ventricular and normal overall function), hypertension, type II diabetes mellitus, and has a history of gout. (Tr. 21).

Plaintiff worked after the alleged disability onset date but the ALJ determined this work activity did not rise to the level of substantial gainful activity. (Tr. 21).  Plaintiff had earnings since his alleged onset date of January 1, 2003. (Tr. 21).  Plaintiff's earnings were as follows: 2004 - $5,227.00; 2005 - $974.00; 2006 - $8,686.00 ; 2007 - $4,738.00. (Tr. 21).

### B.  The ALJ's Findings

At the first step, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through December 31, 2011, and had not engaged in substantial gainful activity since his alleged onset date of January 1, 2003.  (Tr. 22).

At the second step, the ALJ determined that Plaintiff suffered from the following severe impairments: (1) status post left nephrectomy (secondary to renal calculus obstruction), (2) status post pancreatitis, (3) coronary artery disease (with normal left ventricular and normal overall function), (4) hypertension, (5) type II diabetes mellitus and (6) history of gout. (Tr. 21). The ALJ made this finding after reviewing the medical evidence in the record.  (Tr. 21).  The ALJ found that the foregoing impairments impose more than minimal functional restrictions on the Plaintiff's ability to perform the basic requirements of work. (Tr. 22).

At the third step, the ALJ found that Plaintiff does not suffer from an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § Part 404, Subpart P, Appendix 1. (Tr. 22).   The ALJ determined that Plaintiff does not meet listings 6.02 (kidney failure); or any cardiovascular listing in 4.02 (heart failure); 9.09 (obesity); 14.09 (fibromyalgia) or 1.04 (disorder of the spine). (Tr. 22).

At the fourth step, the ALJ found that Plaintiff, through the date last insured, "has the residual functional capacity to perform light work" as defined in 20 C.F.R. §§ 404.1567(b) and 416.067(b). (Tr. 22).  The ALJ concluded that Plaintiff would be unable to perform his past relevant work as a truck driver, which is considered medium, semi-skilled work performed at the heavy exertional level. (Tr. 25).

At the fifth step, the ALJ considered Plaintiff's age, education and work experience and determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 26).  Thus, the ALJ determined that Plaintiff's residual functional capacity for the full range of light work, directs a finding of not disabled as directed by Medical-Vocational Rule 202.21 (Tr. 26).

### C.  Plaintiff's History and Medical Information

Plaintiff was seen at the Family Health Center of South West Florida for follow-up evaluations regarding his pancreatitis, blood pressure and diabetes on the following dates: 2/19/2007, 3/14/2007, 4/10/2008, 5/28/2008, 6/3/2008 6/24/2008, 6/26/2008, 7/17/2008, 8/7/2008, 8/11/2008, 10/9/2008, and 12/3/2008. (Tr. 329-360).

During the visit on November 11, 2007, Plaintiff complained of pain in his left shoulder and arm. (Tr. 355).  Record notes from this visit provide that Plaintiff was started on Glyburide and Metformin for his diabetes and advised as to dietary modification to get his weight down. (Tr. 356).  Plaintiff declined diabetes education classes and declined lab draw. (Tr. 355-356).

On June 26, 2008, Plaintiff was admitted for chest pain, syncopal episode, and a fall on the left shoulder. (Tr. 343).  On the July 14, 2008 visit, Plaintiff reported back pain at the level of 7 with 10 being the worst. (Tr. 341).  Plaintiff's left shoulder could not get past 90 degrees without pain and Plaintiffs showed decreased strength in all planes of the rotator cuff muscle strength testing. (Tr. 341).

On May 26, 2008, Plaintiff presented to Lee Memorial Hospital complaining of severe upper abdominal pain mostly in the epigastric and right upper quadrant. (Tr. 258).  Plaintiff advised that for the past three to four weeks he had experienced intermittent abdominal pain which had become "constant and very severe the last two days." (Tr. 258). Plaintiff had experienced vomiting and intermittent diarrhea. (Tr. 258).  Dr. Anthony Dalley, M.D., diagnosed Plaintiff with acute pancreatitis (Tr. 258-259).  Dr. Daniel DeLaTorre, M.D., examined Plaintiff and diagnosed Plaintiff as having 1) abdominal pain, epigastric nausea, vomiting, suspicious for cholecystitis versus recurrent peptic ulcer disease, 2) hypertension currently uncontrolled, 3) diabetes mellitus type II uncontrolled, 4) coronary artery disease, and 5) gout. (Tr. 255-257).  Dr.

Carolyn F. Langford further assessed Plaintiff with "left chronic ureteropelvic junction obstruction secondary to 1.3 cm calculi with chronic cortical thinning" and noted that Plaintiff would need to have cystoscopy, stent and ESWL at a later date. (Tr. 253).

On June, 17, 2008, Plaintiff was seen by Carolyn Langford, D.O., of Southwest Florida Urologic Associates as a new patient for urologic consultation for renal calculus (stones). (Tr. 413). Dr. Langford's assessment/plan provided that it may be to Plaintiff's benefit to place a stent to alleviate the obstruction and that Plainitiff would need a RFS with Lasix to assess the baseline left kidney function. (Tr. 416-417). Dr. Langford was unable to place a stent in the obstructed ureter. (Tr. 23).

On June 19, 2008, Plaintiff was admitted to Lee Memorial for chest pain. (Tr. 306). Plaintiff complained of left shoulder injury and right knee pain secondary to the fall. (Tr. 307). Upon examination, Plaintiff's blood pressure was 189/117 and Plaintiff exhibited left shoulder pain which was worse on abduction. (Tr. 307). After evaluation, Dr. Susan E. Sturm, M.D., assessed Plaintiff as having 1) anterior right chest pain for approximately 45 minutes to one hour, 2) syncopal episode, 3) hypertension, 4) diabetes mellitus; 5) chronic obstruction left kidney secondary to nephrolithiasis, 6) recent duodenitis and mild pancreatitis, possibly secondary to indomethacin, 7) report of "heart attack" not evaluated in Texas, five to six years ago, 8) multiple risk factors-diabetes, hypertension, smoking, and borderline cholesterol." (Tr. 313-315).

On June 20, 2008, Dr. Horace P. Dansby, M.D., conducted electrocardiograms and treadmill stress electrocardiogram on Plaintiff and noted that Plaintiff had "renal lithiasis with non-function left kidney discovered in May 2008, acute pancreatitis in May 2008, duodenitis documented in May 2008, probably secondary to NSAID abuse, degenerative joint disease, and hyperlipidemia. (Tr. 287).

On June 21, 2008, Dr. Harris L. Bonnette, M.D., conducted a carotid duplex complete bilateral evaluation of the extracranial carotid system with 2D ultrasound, spectral and color flow doppler. (Tr. 301-302). Dr. Bonnette concluded that 1) based on velocity criteria, there was evidence of a 1-15% stenosis of the proximal right internal carotid artery, 2) probable stenosis in the lower limits of 16-49 % of the proximal left internal carotid artery, 3) the right vertebral artery was patent and had appropriate antegrade flow, 4) spectral doppler signals of the left vertebral artery appeared dampened, 5) visually the right internal carotid was less than 30%, and 6) visually the left internal carotid was less than 30%. (Tr. 302). Additionally, x-rays of Plaintiff's spine were taken. Dr. Richard Bilodeau, M.D., read the x-rays and had the impression that there was degenerative disease involving the lumbar spine. (Tr. 264, 281, 377-378). Plaintiff was released on June 22, 2008.

On August 6, 2008, Plaintiff presented to Lee Memorial for a cystoscopy, a left retrograde pyelography, and an attempted left stent placement. (Tr. 232).  Plaintiff was noted to have a completely occluding proximal one-third 1.5 cm ureteral calculi. (Tr. 232).  A 21 French cystoscope was entered into Plaintiff's bladder but was not able to be passed above the level of the stone. (Tr. 232). The procedure was stopped and the stent was not inserted (Tr. 232-233, 318-319).

On September 2, 2008, Plaintiff was seen by Dr. Langford for a follow up appointment. (Tr. 409).  Dr. Langford noted that Plaintiff's CT scan showed mild inflammatory changes at pancreatic head and/or pancreatitis and chronic left UPJ obstruction secondary to 1.3 cm stone with significant cortical thinning of the left kidney. (Tr. 409).  Dr. Langford noted that Plaintiff stated that he was feeling sore, but that he was urinating fine. (Tr. 409).  Dr. Langford's assessment provided hydronephrosis and ureteral calculus-left chronic. (Tr. 412).

On September 17, 2008, Plaintiff presented to Lee Memorial Emergency Room for a reniform function scan. (Tr. 205). Dr. John Rodriguez found that Plaintiff had "markedly diminished flow/function of the left kidney with split renal function of 96.8% for the right and 3.2% for the left indicating only minimal flow to the left kidney." (Tr. 205).

On November 4, 2008, Plaintiff returned to Lee Memorial complaining of vomiting and diarrhea which Plaintiff had been experiencing for a couple of days. (Tr. 235). During the visit, Plaintiff stated that he was experiencing no pain. (Tr. 235). Plaintiff was diagnosed by Dr. Christopher N. Robben, M.D., with acute emesis with a history of diabetes and mildly elevated blood sugar (Tr. 235-236).

On November 16, 2008, Plaintiff was admitted to Lee Memorial E.R. with epigastric pain which radiated to the back. (Tr. 229). After examination, Dr. Langford had the following impression: "acute pancreatitis, chronic ureteropelvic junction obstruction with minimal to no function of the left kidney and ureteropelvic junction calculi" (Tr. 229, 387-392). Dr. Islam M. Elfayoumi, M.D., also examined Plaintiff and diagnosed him as having "idiopathic pancreatitis, acute with a secondary diagnoses of: chronic left ureteropelvic junction stone with a left hydro-nephrosis and 3% renal function on the left". (Tr. 246). Plaintiff was released on November 20, 2008 (Tr. 24).

On November 26, 2008, Thomas Renny, D.O., completed a Physical Residual Functional Capacity Assessment at the request of the SSA. (Tr. 320-327). Dr. Renny found that Plaintiff could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk for a total of about 6 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday, and push/or pull without limit. (Tr. 321). In reaching his decision, Dr. Renny noted that Plaintiff alleged that he suffered from lumbalgia, left kidney dysfunction, diabetes mellitus

type 2, hypertension, peptic ulcer disease, and gout. (Tr. 321). Dr. Renny noted that Plaintiff's record showed pancreatitis and the discovery of a left renal stone blocking the left renal pelvis. (Tr. 321). Further, Dr. Renny took note of Plaintiff's radiology report that showed the lumbaglia with lumbar DDD but noted that the report did not report any related serious functional loss and ambulation. (Tr. 321). Dr. Renny addressed Plaintiff's hospital admission for syncope and cardiac stress but again noted that subsequent evaluations of Plaintiff showed normal functioning and no serious functional loss. (Tr. 321-322). Dr. Renny found that Plaintiff's symptoms, physical exams, and other anciallary data suggested at least partial credibility. (Tr. 325).

On December 17, 2008, Plaintiff was admitted to Lee Memorial Hospital. (Tr. 209, 390-394). The left kidney was removed by a left laparoscopic hand assisted nephroureterectomy. (Tr. 209, 390-394). Dr. Karen Earle-Green, M.D., completed a consultative evaluation of Plaintiff. (Tr. 385-387). Dr. Earle-Green noted Plaintiff's systolic blood pressure appeared to be consistently above 150. (Tr. 385). Plaintiff's past medical history included kidney stones, type II diabetes mellitus, hypertension, pancreatitis, peptic ulcer, gout, cororary artery disease with a previous myocardial infarction, bilateral nephrolithiasis, and arthritis of the back, shoulders, and neck. (Tr. 386). Dr. Earle-Green continued Plaintiff's current anti-hypertensives (Tr.387).

Plaintiff returned to Lee Memorial on December 26, 2008, December 29, 2008, and December 30, 2008 for follow-up evaluations. Plaintiff was prescribed Metformin HCL, Carvedilol, Nitrostat, Indomethacin, and Humulin (Tr. 207-227).

On January 8, 2009, Plaintiff was seen at SW Florida Urologic Associates for follow-up appointment for left laparoscopic hand-assisted nephroureterectomy. (Tr. 404-406). Plaintiff's wound was described as "healing well with SS drainage, health granulation tissue noted." (Tr. 406).

On December 17, 2009, Edward Holifield, M.D., completed a Physical Residual Functional Capacity Assessment at the request of SSA. (Tr. 418-425).  Dr. Holified found that Plaintiff could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk 6 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday, and push and/or pull without limit. (Tr. 419). perform a full range of light work (Tr. 419). Dr. Holifield provided that he based his findings on the following: "DM.  Kidney DX. Nephrolithiasis.  H/O pancreatitis.  S/P L. Nephroureterectomy on 12/17/08.  HTN.  No severe EOD noted.  Back Pain.  NL Gait.  No assist noted.  H/O chest pain. Clmt. Exercised for 4:42 Bruce Protocol. No ischemic st segment changes.  Nuclear imagining essentially unremarkable. EF 57% Light RFC project to 12/17/09." (Tr. 419).  Dr. Holifield found the severity of Plaintiff's symptoms/limitations as "not entirely credible" (Tr. 423).

On April 1, 2011, Plaintiff was seen by Robert O'Leary, D.O., for an initial consultation and assessment and completion of physical capacity form at the request of the SSA. (Tr. 429-437).  Plaintiff was noted to be a 49 year old, right handed male complaining of low back pain, left hip pain, and shoulder arthritis. (Tr. 435).  Plaintiff rated pain at an 8 level with 10 as the worst pain. (Tr. 435).  Dr. O'Leary found that Plaintiff is unable to bend or lift without pain and rest and medication, but that he can prepare simple meals and dress himself. (Tr. 435).  Dr. O'Leary's clinical impression was that Plaintiff had 1) degenerative arthritis by history with lumbar spine, left hip and shoulder involvement along with gait dysfunction, 2) diabetes with peripheral neuropathy, and 3) hypertension, gout and depression by history (Tr. 436-438).  Dr. O'Leary also opined Plaintiff could never lift over 10 pounds; could never carry over 10 pounds; could not sit for longer than one hour; stand or walk for longer than 30 minutes; could not stand or walk for more than one hour in an eight hour day and the rest of the time Plaintiff needed to

-12-

be in the supine position; Plaintiff medically needed a cane to ambulate[3]; could occasionally

climb stairs and ramps, stoop and crouch and never climb ladders or scaffolds or kneel or crawl;

and could not walk a block at a reasonable pace on rough or uneven surfaces (Tr. 426-437).

### D. Hearing Testimony

A hearing was held before the ALJ on February 22, 2011. (Tr. 31-60).  Plaintiff testified

as follows.  He stated that he had previously worked as a truck driver for various employers from

1992-2003. (Tr. 35-36).  Plaintiff testified that he had to stop working due to a heart condition,

back and arthritis issues, and diabetes. (Tr. 36).  Plaintiff stated that his number one problem was

probably the osteopath in his back. (Tr. 37).  He stated that the pain alternates from his upper

back to his lower back, through the lumbar and hips, depending on the day. (Tr. 37).  Plaintiff

explained that the pain makes him nonmovable, bedridden, and gives him cold sweats. (Tr. 37).

Plaintiff testified that he suffered a heart attack in 2003 or 2004 while leisurely playing

with his son-in-law. (Tr. 38).  He has not had any heart operations and uses blood pressure pills

and carries nitro pills for when he has attacks. (Tr. 38).  Plaintiff testified that he had been

diagnosed with pancreatitis after going to the emergency room with severe stomach pain. (Tr.

40).  Plaintiff testified that he had his left kidney removed but that it still causes him pain in his

left side. (Tr. 40).

Plaintiff testified that he cannot afford a blood sugar meter to monitor his diabetes, but

knows to inject insulin when his fingers become numb. (Tr. 41).  Plaintiff stated that not having a

blood sugar meter has made him have a hard time with diabetic neuropathy. (Tr. 41).  Due to this

diabetic neuropathy and gout, Plaintiff testified that he has pain in his feet, large toe, heel, and

into his calves. (Tr. 41).  Plaintiff also testified that he has severe pain in his left shoulder and

that it prevents him from even lifting a gallon of milk out of the refrigerator. (Tr. 42).

---

[3] The ALJ notes in his decision that there is no evidence of the Plaintiff being prescribed a cane.

Plaintiff testified that he is unable to take all the medicines his doctor's prescribes due to cost limitations and because his doctors fear that pain medicine might damage his only remaining kidney. (Tr. 43).  Plaintiff stated that his blood pressure medicine causes him fatigue, but that his back and hip pain prevent him from sleeping well. (Tr. 43).  Plaintiff explained that household chores such as doing dishes and caring for his dog take a toll on him. (Tr. 44).  Plaintiff testified that he uses disabled parking and the electric carts to do his shopping. (Tr. 44).  Plaintiff testified that friends and family help him take care of his home by cleaning and doing laundry. (Tr. 45).

After Plaintiff testified, Dr. Sergio Bello, M.D., testified before the hearing as a medical expert. (Tr. 51).  Dr. Bello testified that Plaintiff underwent a work-up for coronary artery disease in anticipation of his surgery and due to an episode of vasovagal syncope. (Tr. 51).  Dr. Bello stated that Plaintiff was able to exercise on a treadmill and there were no ischemic changes on Plaintiff's EKG. (Tr. 51).  Dr. Bello testified that Plaintiff's thallium or perfusion scan indicated that he did have a fixed defect in the inferior wall. (Tr. 51).  Dr. Bello testified that a normal ejection fraction is 50 and that Plaintiff's was 54. (Tr. 51).  Dr. Bello stated that Plaintiff's ejection fraction was normal, that Plaintiff's left ventricular cavitary side as normal, and that overall function was normal. (Tr. 52).  Dr. Bello stated that, while coronary artery disease was established for Plaintiff, "the likelihood that it`s going to cause a severe medical impairment is very unlikely." (Tr. 52).

Dr. Bello further testified that Plaintiff had chronic obstruction in his left kidney and that Plaintiff's left kidney was surgically removed. (Tr. 52).  Dr. Bello testified that he saw nothing in the record to support Plaintiff's claim of developing a hematoma after surgery. (Tr. 52). Dr. Bello testified that he could not speak as to the severity of the pain Plaintiff experiences from gout and arthritis because there was nothing in the record pertaining to chronic pain or chronic

-14-

back issues. (Tr. 53).  Likewise, Dr. Bello stated that he could not testify as to Plaintiff's

arthritis, left shoulder condition and neuropathy because he did not have records on these

conditions. (Tr. 54).

After Dr. Bello testified, the ALJ questioned Vocational Expert Robert Raschke. (Tr. 55).

The ALJ asked the VE whether there were any jobs in the regional or national economy that

could be performed by  a person with Plaintiff's education and age, with restriction of occasional

stooping, crawling and bending, with a mental RFC of mild for activities of daily living and

social function, mild for concentration, persistence, and pace, with difficulty with detailed and

complex instructions 40 to 50 percent of the day. (Tr. 57).  The VR responded that Plaintiff's

past work would be eliminated because of the exertional requirements. (Tr. 57).  The VE testified

that with mild impairments of concentration, pace and persistence, such a person could only

perform entry level jobs. (Tr. 57).  The VR suggested that such a person could work as a packer,

hand packer, machine feeder, offbearer or machine operator. (Tr. 57).

The ALJ next asked whether there are any jobs in the regional or national economy that a

person could perform who had a light RFC in terms of occasional stooping, crawling, and

bending, and the mental RFC of mild for activities of daily living, mild for social function, but

moderately impaired for concentration, persistence, and pace, and that person would be off task

40 to 50 percent as to simple, repetitive task in terms of maintaining a normal production

schedule. (Tr. 58).  The VR responded that there were no jobs that such a person could work

because the limitation to moderate at concentration, pace, and persistence eliminates all work at

any exertional level. (Tr. 58).

## II.     Specific Issues and Conclusions of Law

On appeal, Plaintiff raises the singular issue of whether the weight of the evidence supports the ALJ's finding that Plaintiff is not disabled. (Pl.'s Mem. at 13).  Plaintiff argues that the ALJ's decision that Plaintiff has the RFC to perform light work is not supported by the weight of the evidence. (Pl.'s Mem. at 14).  Specifically, Plaintiff argues that the ALJ's RFC assessment is flawed because it did not properly take into account the consultative physical examination performed by Dr. Robert O'Leary. (Pl.'s Mem. at 14-17).  Furthermore, Plaintiff contends that the ALJ's credibility determination of Plaintiff's symptoms is flawed because Plaintiff's complaints of pain were substantiated by numerous doctors. (Pl.'s Mem. at 18).  Defendant responds that substantial evidence supports the ALJ's decision that the Plaintiff was not disabled. (Df.'s Mem. at 3).

As stated above, the Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405 (g).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion." *Crawford v. Comm'r.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)).  Even if the evidence preponderates against the Commissioner's findings, the Court must affirm if the decision reached is supported by substantial evidence. *Id.*  The Court may not decide facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's

decision.  Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

In his Memorandum in Support of Plaintiff's Complaint, Plaintiff correctly points out that the ALJ's opinion misstates Dr. O'Leary's findings regarding Plaintiff's functional restrictions. (Pl.'s Mem. at 17).  In his opinion, the ALJ incorrectly provided that Dr. O'Leary found that Plaintiff could sit, stand, and walk for 6 hours in an 8-hour day, in addition to other restrictions. (Tr. 25).  In fact, Dr. O'Leary opined that Plaintiff could sit only 4 hours, stand 1 hour, and walk 1 hour in an 8-hour work day. (Tr. 430).  Dr. O'Leary also relates that Plaintiff would need to be in a "supine" position for the remaining two hours of the work day. (Tr. 430).

In this case, although the ALJ misstated Dr. O'Leary's determination of Plaintiff's functional restrictions, the ALJ's ultimate determination that the Plaintiff is not disabled is nevertheless supported by substantial evidence.  The ALJ's opinion shows that Plaintiff's RFC assessment was determined after a careful review of Plaintiff's entire medical record, including the consultative physical examination performed by Dr. O'Leary. (Tr. 22-25).  Although he misstated Dr. O'Leary's determination of Plaintiff's functional restrictions, the ALJ's opinion demonstrates that the ALJ otherwise correctly described Dr. O'Leary's medical findings. (Tr. 24).  The ALJ gave substantial consideration to Dr. O'Leary's consultative physical examination, but decided to afford Dr. O'Leary's opinion little weight. (Tr. 24).  The ALJ provided ample reasons for his decision.  The ALJ noted that Dr. O'Leary relied excessively on the Plaintiff's subjective complaints which the ALJ found to be unsupported by objective signs, symptoms, and laboratory findings. (Tr. 25). The ALJ explained that there is no corroboration by laboratory testing that the Plaintiff has diabetic peripheral neuropathy. (Tr. 25).  The ALJ found of particular note that there is no evidence that the Plaintiff is taking pain medication of any sort.

-17-

(Tr. 25).  The ALJ noted that Plaintiff fell and hurt his shoulder, but his x-rays were normal. (Tr. 25).  The ALJ found that there were no imaging studies of Plaintiff's left hip and more importantly that no evidence that he sought ongoing treatment for any orthopedic problem despite the fact that this was his only complaint to Dr. O'Leary in April, 2011. (Tr. 25).  Although Plaintiff's allegations were orthopedic, the ALJ observed that there is little in the records to confirm the severity of an orthopedic condition. (Tr. 25).

Furthermore, the ALJ's decision to accord Dr. O'Leary's opinion little weight is due to the contrary opinions of Dr. Bello and Dr. Edward Holifield, which the ALJ accorded significant weight. (Tr. 25).  Dr. Bello reviewed all the medical records, and provided his medical opinion as to the severity of each of Plaintiff's alleged disabling impairments. (Tr. 51-55).  Other than a lumbar spine x-ray taken after a fall that revealed normal disc spaces and osteophte formation involving L3, L4, L5 (Tr. 264), Dr. Bello found no other evidence in the record documenting continued pain or restriction. (Tr. 54-55).  The record shows that Dr. Holifield found that Plaintiff's symptoms were not entirely credible and that the Plaintiff could perform light work. (Tr. 423).

Dr. O'Leary was not a treating doctor and, thus, the ALJ was not required to give his opinion controlling or great weight. *See Philips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004).  The ALJ explained why he accorded Dr. O'Leary's opinion little weight by amply citing to record evidence inconsistent with Dr. O'Leary's opinion and to the contrary opinions of Dr. Bello and Dr. Holifield.  Although he misstated Dr. O'Leary's functional restriction findings, the ALJ properly considered the medical evidence on which those restrictions were based and still found the weight of the evidence supported the finding that Plaintiff has the RFC to perform a

full range of light work.  For these reasons, the Court finds that substantial evidence supports the ALJ's RFC assessment.

Plaintiff further contends that the ALJ's determination that Plaintiff is not disabled is not supported by substantial evidence because Plaintiff's complaints of pain were substantiated by numerous doctors. (Pl.'s Mem. at 18).  In support of his argument, Plaintiff cites to Social Security Ruling 96-7p's provision that an individual's statements about the intensity and persistence of symptoms or the effect of the symptoms on his ability to work may not be disregarded solely because they are not substantiated by objective medical evidence. (Pl.'s Mem. at 18).  Defendant argues that substantial evidence supports the ALJ's decision to find Plaintiff's complaints not credible. (Def.'s Mem. at 7-9).

The Eleventh Circuit has established a three-part "pain standard" that courts must follow to determine if a claimant's subjective complaints of pain support a finding that the claimant is disabled. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  This standard requires "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Id.* A claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability. *Id.* "If the ALJ decides not to credit such testimony, he must articulate explicit and adequate reasons for doing so." *Id.* In determining credibility, the ALJ must consider the entire case records, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the

-19-

case record. *Glover v. Comm'r of Social Sec.*, 2012 WL 84775, at *8 (M.D. Fla. 2012) (citing

SSR 96-7p.). A reviewing court will not disturb a clearly articulated credibility finding with

substantial supporting evidence. *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995).

  In this case, the Plaintiff satisfied the pain standard because the ALJ found that Plaintiff's

medically determinable impairments could reasonably be expected to cause the alleged

symptoms. (Tr. 24).  The ALJ, however, made a specific credibility finding that Plaintiff's

statements concerning the intensity, persistence and limiting effects of these symptoms were not

credible to the extent that they were inconsistent with the ALJ's RFC assessment. (Tr. 24).  The

issue before the Court is, thus, whether the ALJ's credibility finding is supported by substantial

evidence.

  Here, substantial evidence supports the ALJ's credibility finding.  The ALJ discussed the

framework for evaluating subjective complaints as set out in the regulations and Social Security

Ruling 96-7p (Tr. 22), summarized all the evidence from Plaintiff's medical providers (Tr. 22-

24), compared Plaintiff's testimony to that evidence to conclude Plaintiff's statements

concerning the intensity, persistence, and limiting effects of his symptoms were not credible (Tr.

24-25).  Specifically, the ALJ cited to the testimony from Dr. Bello, who noted that the record

was very limited as to an orthopedic problem (Tr. 24, 53). Plaintiff had one lumbar x-ray, which

showed degenerative changes and normal disc spaces, one shoulder x-ray, which was normal,

and no studies of his hip (Tr. 281, 377).

  The ALJ noted that Dr. O'Leary had premised Plaintiff's limitations on a diagnosis of

diabetic neuropathy despite the fact that records from Family Health Center of South West

Florida evidenced no neurological abnormalities (Tr. 24, 330, 336, 341, 350, 355). The ALJ

addressed Plaintiff's testimony that he had pain in his feet from gout and back pain from a

kidney stone, but he noted that the medical evidence showed only one instance of a gout flare-up in 2007, and Plaintiff's kidney problem was resolved with surgery in 2008 (Tr. 24-25, 224,356).

As the ALJ clearly articulated his credibility decision, which was supported by substantial evidence, the Court will not disturb the ALJ's determination that Plaintiff is not disabled. *See Foote*, 67 F.3d at 1562.  Plaintiff failed to meet his burden of proving that he is disabled.

## IV.      Conclusion

The Court finds that the ALJ's decision is consistent with the requirements of the law and is supported by substantial evidence.  Therefore,

**IT IS RESPECTFULLY RECOMMENDED** that the decision of the Commissioner be **AFFIRMED.**

In Chambers, Fort Myers, Florida, this 20th day of August, 2013.


DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE


## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations in this report pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 6.02 within ten days of the date of its filing shall bar an aggrieved party from a *de novo* determination by the district court of issues covered in the report, and shall bar an aggrieved party from attacking the factual findings on appeal.


The Court Requests that the Clerk of Court Mail or Deliver Copies of this Order to All Parties and All Counsel of Record